Rebecca Lee WALES, Appellant,

v.

Frank WILLIFORD, III, M.D., Appellee.

No. 09 87 127 CV.

Court of Appeals of Texas, Beaumont.

Jan. 28, 1988.

Rehearing Denied Feb. 17, 1988.

Thomas F. Rugg, Beaumont, for appellant.

Kevin J. Keith, Bailey & Williams, Dallas, for appellee.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from the granting of a summary judgment for Appellee, Dr. Frank Williford, III. The action was originally brought as a medical malpractice suit against Dr. Frank Williford, III, Dr. Barnette J. Adams, Jr., and Mid–Jefferson County Hospital. The Appellee, Dr. Frank Williford, III, filed an answer denying the allegations of the Appellant. The Appellant filed a motion for nonsuit against Dr. Barnette J. Adams, Jr., which was granted. A motion for summary judgment was granted in favor of defendant Mid–Jefferson County Hospital. Later, on October 17, 1986, Appellee filed a motion for summary judgment contending that "[a]ll actions taken by Frank Williford, III, M.D., in this case were within the standard of care for physicians practicing general surgery in southeastern Texas" and that "Plaintiff [Appellant] has wholly failed to bring forward any competent evidence to show any link between the alleged negligence of the Defendant [Appellee] and damage to the Plaintiff." A final order for summary judgment in favor of Appellee was signed by the trial court on May 4, 1987. Appellant has timely perfected this appeal.

The Appellant, a woman in her late twenties, was experiencing some severe, excruciating pain up and down her left leg. Appellant did not know the cause of this pain. After a day or two of continuous pain, she visited the Appellee's office on February 9, 1983. While in the Appellee's office an examination was done, being a vaginal exam. The exam revealed that Appellant's uterus was severely retroflexed and that her lower abdomen was tender. During this examination, Appellant told Dr. Williford that she has not had a menstrual period in nearly six months and that she has experienced pain in her pelvic region, lower abdomen and dysmenorrhea. Appellant's medical history revealed that she has had numerous female problems, a miscarriage and one successful pregnancy and birth. Appellant was told by Dr. Williford that an exploratory laparotomy would be performed to determine the cause of her

shooting pain in her left leg. Dr. Williford explained to the Appellant the general procedures involved in an exploratory laparotomy and that there existed a possibility of a hysterectomy being performed. Appellant gave a consent to the surgery. On February 10, 1983, the first laparotomy was performed, including a total hysterectomy and a bilateral saplingo-oophorectomy. Following the first laparotomy, Appellant developed a small bowel ileus. Due to the development of small bowel ileus, Appellant underwent a second exploratory laparotomy on February 22, 1983. As a result of these surgeries, Appellant has developed permanent, intermittent small bowel obstruction for which continued medical treatment is required.

Appellant alleges two points of error which reads as follows.

(1) "The Trial Court erred in ruling that no fact issue existed as to the negligence of Appellee since the deposition testimony of Appellant's expert raised the issue concerning inadequate consideration of differential diagnosis of abdominal symptoms, unnecessary hysterectomy, improper follow-up care post surgery, unnecessary second abdominal surgery, improper postoperative follow-up care from second surgery and failure to request expert consultation.

(2) "The Trial Court erred in ruling that no fact issue existed as to proximate cause of injury where Appellant's expert stated that 'I feel that departures from a good and accepted medical practice was the cause of significant injuries to this patient.' "

Appellant contends that Appellee has failed to meet his burden of proof under *TEX.R.CIV.P. 166–A* to establish that no genuine issue of material fact existed. Further, the Appellant contends that the affidavit of Appellee's expert wholly fails to mention, much less raise or establish, the proper standard of care. Lastly, the Appellant contends that the mere conclusion that no injury was suffered, in face of the evidence that Appellee underwent two unnecessary surgeries, is totally unworthy of belief. The Appellee responds by stating that the *uncontroverted summary judgment proof provided by Dr. Fish established, as a matter of law, that there was no act or omission* by Dr. Williford which proximately caused any damages to Appellant.

We conclude that, in deciding a motion for summary judgment, the trial court is restricted to those pleadings, depositions, answer to interrogatories, admissions and affidavits *then on file at the time of hearing* which conclusively demonstrate that there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. *See TEX.R.CIV.P. 166–A(c).* The rule and practice allows for consideration of summary judgment proof filed after the hearing but before judgment only with permission of the court. The trial court is not authorized to hear or receive oral or written evidence or give consideration to any material not before it in the record.

In *Barrow v. Jack's Catfish Inn,* 641 S.W.2d 624 (Tex.App.—Corpus Christi 1982, no writ), a motion for summary judgment was filed on February 23, 1981. An order granting the motion, in favor of the defendant, Jack's Catfish Inn, was rendered on April 29, 1981. The deposition of the plaintiff was not filed until July 7, 1981. The appellate court held that a deposition which was not on file on the date the motion for summary judgment was granted cannot be considered as summary judgment evidence. The appellate court held that the deposition was, therefore, not properly before the trial court.

In the case at bar, Appellant's expert physician's deposition was not filed until June 19, 1987. The motion for summary judgment was filed on October 17, 1986, and hearing on the motion was held on May 4, 1987. It is clear from the record that Dr. Brink's [Appellant's expert] deposition was not filed until about 1½ months after the hearing and the signing of the judgment. In reviewing a summary judgment, we will only consider those records which were properly before the trial court. We hold that, since the deposition of Dr. Brink was not filed until several weeks

after May 4, 1987, we will consider only that evidence presented to, and before, the trial court.

The purpose of summary judgment is to eliminate patently unmeritorious claims or untenable defenses. *Swilley v. Hughes,* 488 S.W.2d 64 (Tex.1972). A summary judgment should be granted only if the summary judgment proof establishes the absence of any genuine issue of a material fact and, moreover, that the movant has a right to judgment as a matter of law. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176 (Tex.1972). The party seeking the summary judgment has the burden of proof and all doubts as to the existence of a genuine issue of fact are to be resolved against him. *Parrott v. Garcia,* 436 S.W.2d 897 (Tex.1969).

In order for Appellee to prevail, it is incumbent on the Appellee to show that he has met Appellant's case as pleaded and to demonstrate that the Appellant cannot prevail. In other words, the Appellee/defendant must *negate the Appellant/plaintiff's right to recover damages for the personal injuries, if any, sustained by offering acceptable summary judgment evidence which shows there is no genuine issue of material fact* upon which the Appellant can prevail.

In the case at bar, the only evidence considered by the trial court, as stated by the trial court in its judgment, consisted of the following: (1) the affidavit of Dr. J.C. Fish attached to defendant Williford's Motion for Summary Judgment; (2) the depositions on file in this cause [only excerpts of depositions were considered]; (3) defendant Williford's supplement to his Motion for Summary Judgment; and (4) other competent summary judgment evidence *before the trial court.*

We have carefully reviewed the trial record and the briefs and we determine that only excerpts from depositions were submitted. Dr. Williford, in his brief, clearly states that the only competent medical summary judgment evidence considered by the trial court was the affidavit of Dr. Fish, since neither Dr. Williford's deposition, nor Dr. Brink's, was filed prior to the summary judgment hearing. Neither was a part of the summary judgment proof.

■ The test as to whether a summary judgment should have been granted was whether, if the statements in affidavits were the extent or totality of the testimony on the trial of the same case on the merits, that an instructed verdict would have been proper. *Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707 (1960). In order to constitute proper summary judgment proof, an affidavit must state facts in such a way that the testimony, if given on the witness stand in a conventional trial, would be admissible and competent proof. *Bennett v. State Nat. Bank, Odessa, Tex.,* 623 S.W.2d 719 (Tex.Civ.App.—Houston [1st Dist.] 1981), writ ref'd n.r.e.).

■ The affidavit of Dr. Fish reads as follows:

"I deny that Dr. Williford failed in any respect to do that which a reasonable, prudent medical doctor would have done under the same or similar circumstances. All the treatment and care that Dr. Williford provided to Rebecca Lee Wales was provided in accordance with accepted standards of medical practice prevalent in Jefferson County, Texas on February 10, 1983 and February 22, 1983. The development of adhesions and continued pain in Rebecca Lee Wales' lower abdomen was and is a normal result of a hysterectomy and salpingo-oophorectomy. Based on reasonable medical probability, no act or omission on Dr. Williford's part caused any injury or damage to Rebecca Lee Wales."

Also, in Dr. Fish's affidavit, as to the February 23, 1983, surgery, he states:

"Based upon such evidence (various diagnostic studies, such as X-rays, small bowel series and a KUB exam [kidney, ureter and bladder exam], any delay to re-operate on the patient would have been in error ... *In my opinion,* he exercised excellent judgment when he refrained from further manipulation of the bowel or intra-abdominal content and reclosed the patient." (Emphasis ours)

We find the language, as expressed in the affidavit, would have been admissible and competent proof in a conventional trial. It would be admissible because, in a medical malpractice case such as the case at bar, expert testimony is required. Opinion testimony by experts *may be* the sole basis for the granting of a summary judgment, the only requirement being that the testimony be clear, positive and free from contradictions and inconsistencies and could have been readily controverted. *See Ford v. Ireland,* 699 S.W.2d 587 (Tex.App.—Texarkana 1985, no writ). The affidavit of Dr. Fish is definite, clear, positive, direct and free from contradictions and inconsistencies. Also, the affidavit could have been controverted by the Appellant. It was not.

■ Besides, Dr. Fish was from the same school of practice as the Appellee. Both Dr. Fish and Dr. Williford are general surgeons. The testimony of an expert of the same school of practice as the defendant doctor can show that the diagnosis or treatment was not negligent and that the diagnosis or treatment was not proximate cause of patient injuries. *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965). The affidavit of Dr. Fish clearly renounces any negligence on the part of Dr. Williford.

■ We find that the affidavit of Dr. Fish has met the test as stated in *Killough, supra,* and that the granting of summary judgment was proper. While the movant in a summary judgment proceeding has the burden to establish his right to judgment as a matter of law, he is not required to negate all possible issues of law and fact that could be raised by non-movant but were not. *INA of Texas v. Bryant,* 686 S.W.2d 614 (Tex.1985). Hence, we overrule the Appellant's Points of Error No. One and No. Two.

Rebecca Wales' only pleading was, and is, her original petition. The original petition complains only of misdiagnosis of the cause of her abdominal and leg pain and that, following surgery of February 10, 1983, Wales developed a small bowel ileus. Her cause of action for medical malpractice is based on alleged negligence on the part of Dr. Williford. She further alleges that,

as a proximate cause of Williford's negligence, she suffers from permanent intermittent small bowel obstruction which has necessitated repeated hospital visitations resulting, she avers, in a severe and debilitating illness.

The order and final judgment granting the motion for summary judgment, filed by Dr. Frank Williford, III, M.D., was signed on May 4, 1987.

There is a deposition of Dr. Robert R. Brink, M.D., who apparently resides in San Francisco, California, whose deposition was not filed, as we understand it, with the District Clerk of Jefferson County until June 18, 1987. As we understand it, this deposition could not have been part of the record and was not before the District Judge. Then, on the next day, June 19, 1987, the deposition was filed with our Appellate Clerk. We do not perceive that the deposition of Dr. Robert R. Brink, M.D., *would properly be in the record before us.*

The dissent poses questions concerning the deposition of Dr. Brink. The answer to the questions is in the plain and unambiguous language of *TEX.R.CIV.P. 166–A(c).* That Supreme Court rule mandates that the judgment "shall be rendered" on certain proofs "on file at the *time of the hearing,* or *filed thereafter and before judgment* with permission of the court...." (Emphasis added) An intermediate appellate court, we think, should not violate, directly and flagrantly, a rule of the Supreme Court. It is glaringly clear, from the materials, that Dr. Brink's deposition was "filed" in the District Clerk's office long after the time of the hearing and long after the trial court's judgment was signed. Appellant had no permission of the trial court for this extremely late filing. Indeed, Dr. Brink's deposition was "filed" so late that the district judge was forbidden by *Rule 166–A(c)* to grant permission to "file" same. The simple reason that Brink's deposition is physically here in our court is that it was sent up by the District Clerk and our Clerk put an additional "file" mark on it, as explained above. Our Clerk would have been correct to have marked the deposition "received". But our Clerk putting a "file mark" on the deposition does not eviscerate the Supreme Court's

*Rule 166–A.* Also, our Clerk cannot be expected to decide these matters.

We would like to be able to give Appellant, Wales, her full day in court before a jury. Wales is a young lady having sustained a complete hysterectomy. Probably every appellate judge would feel good and experience an inner glow by affording Wales her full day in court with a jury; but we think the Supreme Court rule must be adhered to. If *Rule 166–A* is to be changed or disregarded or made extremely flexible, the Supreme Court should make those radical modifications.

Dr. Brink's deposition is simply not properly before us for consideration as a part of the record on appeal; *Rule 166–A* forbids it. Otherwise, when is a record complete in a summary judgment proceeding? Following our dissenting brother's reasoning, would it not be proper to permit and consider freshly-taken depositions and affidavits which were "filed" or, more properly, "received" by our Clerk even after the appealed case had been fully submitted to us by oral argument, but prior to the time that an opinion had been written and handed down by us? If, in a practical, pragmatic sense, *Rule 166–A* is simply not to be observed, when can a trial court rule upon a motion for summary judgment with any finality?

Furthermore, if a deposition "filed" with the District Clerk *45 days after the District Court signs the judgment* is to be considered on appeal, *when can the trial judge know what record he or she is ruling on?* This procedure would sound the death knell to the summary judgment practice at the trial level.

We affirm the trial court judgment.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority affirms the granting of the summary judgment by holding that the deposition of the plaintiff's expert was not properly before the trial court nor properly before us. As to whether the deposition is properly before us, I leave that to another day. (Although if it is not before us, how can we determine if it was or was not on file at the time of the summary judgment hearing?)

The real crux of the matter is whether the deposition could be considered by the trial court. I readily grant that *rule 166a* applies to the deposition on file at the time of the hearing. I further recognize there were numerous cases holding that depositions which are not on file at the time of the hearing are not competent summary judgment proof. I do not believe the language of *rule 166a* sets forth a concrete requirement for which there is no exception. A case relied upon by the majority, *Barrow v. Jack's Catfish Inn,* 641 S.W.2d 624 (Tex.App.—Corpus Christi 1982, no writ), couches the requirement in the following language: "As a general rule, a deposition which was not on file on the date the motion for summary judgment was granted cannot be considered as summary judgment evidence." If the requirement is absolute, then why include the disclaimer "as a general rule"?

In *Bryant v. INA of Texas,* 673 S.W.2d 693 (Tex.App.—Waco 1984), *aff'd,* 686 S.W.2d 614 (Tex.1985), a late filed deposition was held to be properly a part of the summary judgment evidence because it was specifically referenced in the summary judgment order. It is apparent to this writer, in the instant case, that the deposition of Dr. Brink was before the trial court. In the first place, the movant stated in the motion for summary judgment that "[s]ummary judgment evidence consists of the depositions of ... the Plaintiff's expert, Robert R. Brink, M.D." The movant even attached excerpts of Dr. Brink's deposition to the motion. Thereafter, the non-movant filed a response relying upon Dr. Brink's deposition, averring it was properly filed, and a report of Dr. Brink's which was attached to the response. The movant filed objections to the use of the report, but never objected to the use of Dr. Brink's deposition, nor called the trial court's attention to the fact the deposition was not on file. In fact, the movant then filed a supplemental motion and again referenced Dr. Brink's deposition in support of the motion. It was only after the non-movant supplemented the transcript with the depositions that the movant raised the issue that Dr. Brink's deposition was not properly before the trial court. *Rule 166a* notwithstand-

ing, I believe this was too late. It would appear to me that all the participants below were under the impression that the deposition was filed and all the participants relied upon the deposition. It is this bilateral misconception and reliance that would make the deposition competent summary judgment evidence. Compare *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), where the excerpts from a deposition were only in a summary judgment response. I would hold the instant situation to be one which does not fit the "general rule" of *rule 166a*. If *TEX.R.CIV.P. 1* has any meaning when it states that the proper objective of the rules is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants, then equity requires the movant to have "clean hands." The movant's repeated references to the deposition and failure to call to the trial court's attention the status of the deposition have resulted in the movant's waiver of the requirements of *rule 166a*. I therefore dissent to the majority's manner of affirmance in that it does not reach the real question of whether the deposition testimony of Dr. Brink is competent expert testimony. *See Milkie v. Metni*, 658 S.W.2d 678 (Tex.App.—Dallas 1983, no writ).