Affirmed and Memorandum Opinion filed September 19, 2006








Affirmed and Memorandum Opinion filed September 19, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00624-CV

____________

 

SHEILA R. HICKS, Appellant

 

V.

 

CAPTAIN ELLIOTT=S PARTY BOATS, INC., Appellee

 



 

On Appeal from the 239th
District Court

Brazoria County, Texas

Trial Court Cause No. 24006*PS03

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Sheila R. Hicks, appeals the trial court=s granting summary
judgment in favor of appellee, Captain Elliott=s Party Boats,
Inc., on her negligence claim related to the death of her husband.  We affirm. 


                                                  Background








On August 16, 2001, James Hicks was a passenger on the M/V
LADY ANNA for the purpose of offshore fishing.  He was accompanied by his
brother-in-law, Kenneth Carter, and his friend, Benjamin T. Smith.  Captain
Elliott=s Party Boats
owned and operated the M/V LADY ANNA.  Working on the vessel that day were
Captain Steven Odstrcil and two crew members.  

The M/V LADY ANNA left Freeport, Texas at 6:00 a.m., and at
9:30 a.m., was 45 nautical miles south of Freeport.  At approximately 10:45
a.m., James became ill.  He fell down and was vomiting, sweating, weak, and
pale.  One of the crew members took James downstairs.  The crew and Capt.
Odstrcil believed James was seasick.  However, James=s condition
worsened.  At 11:45 a.m., James=s brother-in-law and friend advised Capt.
Odstrcil that he should check on James because he was incoherent.  James did
not have a heartbeat and a crew member and another passenger performed CPR on
him.  

Capt. Odstrcil contacted the United States Coast Guard in
Freeport, and the M/V LADY ANNA started the return trip to Freeport.  CPR was
performed on James until the Coast Guard helicopter arrived at 1:45 p.m., to
evacuate him from the vessel.  James was pronounced dead upon arrival, or
shortly thereafter, at the University of Texas Medical Branch in Galveston.  An
autopsy revealed James had cardiovascular disease and the cause of death was a
heart attack.[1] 


On April 24, 2003, Sheila brought claims under the Wrongful
Death Act[2]
and the Survival Statute,[3]
alleging that James=s death was the result of Captain Elliott=s Party Boat=s negligence in
failing to provide reasonable care for James, an appropriate response to his
physical condition, and reasonable medical care and treatment for him.  








On January 21, 2005, Captain Elliott=s Party Boats
filed both a traditional and a no-evidence motion for summary judgment.  In the
traditional motion for summary judgment, Captain Elliott=s Party Boats
argued Sheila=s wrongful death claim falls exclusively under the
Death on the High Seas Act (ADOSHA@)[4]
and, therefore, her state law claims and damages are preempted by DOSHA.  In
the no-evidence motion for summary judgment, Captain Elliott=s Party Boats
argued Sheila presented no evidence of its negligence.  On March 24, 2005,
Sheila filed a first amended petition alleging a cause of action under DOSHA. 
On March 28, 2005, the trial court granted Captain Elliott=s Party Boat=s motion for
summary judgment.  On April 12, 2005, Sheila filed a motion for new trial,
which the trial court denied.  

In three issues on appeal, Sheila claims the trial court
erred by (1) granting Captain Elliott=s Party Boat=s traditional
motion for summary judgment, (2) granting Captain Elliott=s Party Boat=s no-evidence
motion for summary judgment, and (3) denying her motion for new trial.

             No-Evidence Summary Judgment Standard of
Review

In her second issue, Sheila contends the trial court erred
by granting the no-evidence motion for summary judgment because she presented
evidence on all elements of her negligence claim.  Under Rule 166a(i), a party
may move for summary judgment on the ground that there is no evidence of one or
more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial.  Western Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005).  A no-evidence summary judgment is essentially a
pretrial directed verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
750 (Tex. 2003).  We apply the same legal sufficiency standard in reviewing a
no-evidence summary judgment as we apply in reviewing a directed verdict.  Id.
at 750B51.  We review the
evidence in the light most favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts against the motion.  City of
Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005).  








Unless the nonmovant produces summary judgment evidence
raising a genuine issue of material fact, the trial court must grant the
motion.  Western Invs., Inc., 162 S.W.3d at 550.  A genuine issue of
material fact exists if the nonmovant produces more than a scintilla of
evidence establishing the existence of the challenged element.  Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004).  Less than
a scintilla of evidence exists when the evidence is A>so weak as to do
no more than create a mere surmise or suspicion= of fact.@  King Ranch,
Inc., 118 S.W.3d at 751 (quoting Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983)).  When the trial court=s order does not
specify the basis for its ruling, we must affirm the trial court=s judgment if any
of the theories advanced are meritorious.  Browning v. Prostok, 165
S.W.3d 336, 344 (Tex. 2005).

                                                    Negligence

The elements of negligence are (1) the existence of a duty,
(2) breach of that duty, and (3) damages proximately caused by the breach.  Western
Invs., Inc., 162 S.W.3d at 550.[5] 
Proximate cause requires cause-in-fact and foreseeability.  Id. at 551. 
The test for cause-in-fact is whether the act or omission was a substantial
factor in causing the injury without which the harm would not have occurred.  Id. 
There is no cause-in-fact if the defendant=s negligence
merely furnished a condition that made the injuries possible.  Id. 
Cause-in-fact cannot be established by mere conjecture, guess, or speculation. 
Id.  








Sheila submitted the affidavit of Benjamin T. Smith, who
was James=s friend and also on the same fishing trip.  Smith
stated that after James fell, he Alooked quite ill,
exhibiting signs of weakness and confusion, he lost his color, and began
sweating profusely.@  About 10 or 15 minutes after a crew
member helped James below, Smith checked on James and noticed there was no crew
member with James.  James had his eyes closed and told Smith that he was Anot right.@  Smith stayed
with James for a while and then he and James=s brother-in-law,
Kenneth Carter, asked a crew member to get the captain because they thought
they needed to head back to shore.  The crew member told Smith, AWe=re not going to
turn this boat around for one person.@  

According to Smith, Capt. Odstrcil said James was probably
seasick; at this point, the captain had not seen James.  Capt. Odstrcil finally
saw James about 45 minutes after Smith and Carter had first told him there was
a serious problem.  Capt. Odstrcil did not examine James or ask him any
questions, but told him to lie down.  James was not responding, his breathing
was labored, and he was sweating.  About an hour after first informing Capt.
Odstrcil that the problem was serious, Smith told him James=s condition was
more serious than seasickness and asked if he could call someone.  Capt.
Odstrcil told Smith that AWe can=t call the Coast
Guard unless there is a serious situation.@  After this, one
of the passengers who had been helping James said he was dead.  Capt. Odstrcil
then called the Coast Guard.  

Sheila also submitted the affidavit of Capt. Richard L.
Frenzel in which he testified that the captain and crew of the M/V LADY ANNA
did not exercise reasonable care under the circumstances.  According to Capt.
Frenzel, the captain and crew should have, at least: (1) attended to James in a
more timely and thorough manner; (2) made specific inquiries into his symptoms
and condition to better ascertain the nature and extent of his problem; (3) placed
a qualified individual on watch over James; and/or (4) radioed to shore sooner
for assistance, either for James=s evacuation or
for help in making a proper assessment of his condition.  Capt. Frenzel also
stated there should have been at least two crew members trained in first aid
and CPR, but only Capt. Odstrcil had this certification.  








Sheila further submitted the affidavit of Dr. George
Burnazian, M.D. who stated the captain and the crew made the erroneous
assumption that James was simply seasick without considering any other more
serious condition.  According to Dr. Burnazian, James presented symptoms Aatypical@ of seasickness
and more consistent with other more serious conditions, including a heart
attack, because a person suffering from seasickness does not ordinarily fall
down, perspire, or become incoherent.  Dr. Burnazian stated the captain should
have asked James about any medical conditions and medications he was taking;
had a crew member watch over him in case any complications arose; started a
return to shore; and contacted the Coast Guard to request emergency advice and
assistance.  

The testimony of
Capt. Frenzel and Smith concerns the standard of care and the alleged breach of
that standard.  Similarly, most of Dr. Burnazian=s testimony
addresses the standard and breach.  Such testimony is not evidence of proximate
cause.  The only attempt to produce evidence of proximate cause is the
following statement in Dr. Burnazian=s affidavit:

AIt is my opinion,
based on a reasonable degree of medical probability that, had the Captain
and/or crew of the M/V LADY ANNA taken appropriate action earlier, Mr. Hicks= chances of survival
would have been greatly increased.  Whatever Mr. Hicks= chance of
survival was, the Captain and/or Crew of the M/V LADY ANNA deprived him of it
by doing nothing until its was too late.@  

At best, Dr. Burnazian stated James=s Achances of
survival would have been greatly increased.@  This falls short
of presenting more than a scintilla of evidence that the captain and crew=s actions, or lack
thereof, were the cause-in-fact of James=s death.  See
Western Invs., Inc., 162 S.W.3d at 551 (explaining the test for
cause-in-fact is whether the act or omission was a substantial factor in
causing the injury without which the harm would not have occurred).  Having
failed to produce more than a scintilla of evidence on cause-in-fact, we
conclude Sheila has not met her burden to raise an issue of material fact on
the element of proximate cause.  








Sheila=s second issue is overruled.  Because the
trial court correctly granted the  no-evidence motion for summary judgment, we
need not address Sheila=s first issue complaining of the trial
court=s granting Captain
Elliott=s traditional
motion for summary judgment.  See Browning, 165 S.W.3d at 344
(explaining that when the trial court=s order does not
specify the basis for its ruling, we must affirm the trial court=s judgment if any
of the theories advanced are meritorious). 

                                          Motion for New Trial

In her third issue, Sheila complains that the trial court
erred by denying her motion for new trial.  A trial court=s ruling on a motion
for new trial will not be reversed without a showing of an abuse of
discretion.  Director, State Employees Workers= Comp. Div. v.
Evans, 889 S.W.2d 266, 268 (Tex. 1994).  A trial court abuses its discretion
when it fails to correctly analyze or apply the law.  In re E.I. DuPont de
Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding).  

In her motion for
new trial, Sheila argued that she had submitted competent evidence
demonstrating a genuine issue of material fact on the element of proximate
cause.  Attached to her motion for new trial in support of the proximate cause
element, was a supplemental affidavit by Dr. Burnazian, in which he stated:

It is my opinion, based on a
reasonable degree of medical probability, that the failure of the Captain and
Crew of the M/V LADY ANNA to render aid to Mr. Hicks was, more likely than not,
a substantial factor in his death and that his death was, in fact, a direct
result of, and reasonably probably consequence of, the Captain and Crew=s failure to
render appropriate medical assistance to him.








AExcept on leave of court, the adverse
party, not later than seven days prior to the day of hearing may file and serve
opposing affidavits or other written response.@  Tex. R. Civ. Proc. 166a(c).  Under Rule
166a(c), the trial court can render summary judgment only on the evidence
before it at the time of the hearing.  Hernandez v. Lukefahr, 879 S.W.2d
137, 142 (Tex. App.CHouston [14th Dist.] 1994, no writ).  The
trial court may accept late filing of the nonmovant=s evidence only up
to the time it renders summary judgment.  Knapp v. Eppright, 783 S.W.2d
293, 295 (Tex. App.CHouston [14th Dist.] 1989, no writ).  Dr.
Burnazian=s supplemental affidavit, having been filed with the
motion for new trial, was not before the trial court at the time it granted
summary judgment.  When a motion for new trial is filed after summary judgment
is granted, the trial court may only consider the record as it existed prior to
granting the summary judgment.  Laurel v. Herschap, 5 S.W.3d 799, 802
(Tex. App.CSan Antonio 1999, no pet.); see also Galindo v.
Dean, 69 S.W.3d 623, 627 (Tex. App.CEastland 2002, no
pet.) (stating evidence filed untimely in opposition to summary judgment may be
disregarded by the trial court); Wales v. Williford, 745 S.W.2d 455, 457
(Tex. App.CBeaumont 1988, writ denied) (stating the trial court
is not authorized to hear or receive oral or written evidence or give
consideration to any material not before it in the record in summary judgment
proceeding).  Therefore, the trial court could not properly consider Dr.
Burnazian=s supplemental affidavit that was filed with the
motion for new trial.  

Moreover, because Dr. Burnazian=s supplemental
affidavit was not before the trial court at time it granted the summary
judgment, we will not consider it on appeal.  See, e.g., McMahan v.
Greenwood, 108 S.W.3d 467, 482 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (stating attachments to motion for new trial were not
before the trial court when it granted summary judgment and, therefore, would
not be considered by appellate court on appeal of that judgment); White v.
Wah, 789 S.W.2d 312, 318 (Tex. App.CHouston [1st
Dist.] 1990, no writ) (stating affidavit submitted in support of motion for new
trial could not be considered by court of appeals because it was not on file at
the time of the summary judgment hearing). The trial court did not abuse its
discretion denying Sheila=s motion for new trial and her third issue
is overruled.[6] 









Accordingly, the judgment of the trial court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 19, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.









[1]  The autopsy stated the cause of death was:

Acute anteroseptal myocardial infarction, due to:

Acute occlusion to left main coronary artery, due to: 

Atherosclerotic
and hypertensive cardiovascular disease.





[2]  Tex. Civ.
Prac. & Rem. Code Ann. '
71.002 (Vernon 1997).  





[3]  Tex. Civ.
Prac. & Rem. Code Ann. '
71.021 (Vernon 1997).  





[4]  46 U.S.C. '
761 et seq. (1975 & Supp. 2006)





[5]  The same elements are found in a cause of action for
negligence arising under general maritime law.  Thus, to prevail on a
negligence claim brought under general maritime law, the plaintiff must
establish (1) the existence of a duty owed by the shipowner or operator, (2)
breach of that duty, (3) proximate cause, and (4) injury and damages.  Champagne
v. Tetra Applied Techs., Inc., No. Civ. A. G-05-299, 2005 WL 3478171, at *3
(S.D. Tex. Dec. 20, 2005) (citing Thomas
J. Schoenbaum, Admiralty &
Maritime Law ' 5-5 (4th ed. 2004)).  The parties have not asserted
that the element of proximate cause is treated any differently under general
maritime law than under Texas law.  Because our disposition is the same under
either general maritime or Texas law, we need not address which law to apply,
and we will rely on Texas authorities.  





[6]  Sheila raised two additional grounds her motion for
new trial: (1) the trial court erred in granting the summary judgment on the Aloss of a chance of survival doctrine@; and (2) the trial court erred in granting summary
judgment because DOSHA requires the application of a Apure@ comparative
fault analysis, rendering Texas law on proportionate responsibility
inapplicable.  However, given the affirmance of the summary judgment on
no-evidence grounds, we need not address the other grounds raised in the motion
for new trial because they are not related to the no-evidence motion for
summary judgment.